**FILED**
JAMES J. VILT, JR. - CLERK

FEB 11 2025

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA             PLAINTIFF

v.             CRIMINAL NO. 3:23-CR-112-CRS

JAIRO JAIME TINAJERO             DEFENDANT

### PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United States of America, by Erwin Roberts, Assistant United States Attorney for the Western District of Kentucky, and Defendant, Jairo Jaime Tinajero ("Tinajero" or "Defendant"), and his attorney, Chastity Beyl, have agreed upon the following:

1.      Defendant agrees to waive Indictment by the grand jury and to plead guilty to a felony Superseding Information, which will be filed against Defendant by the United States Attorney for the Western District of Kentucky. That Superseding Information will charge Defendant with violations of Title 18, United States Code, Sections 1962 (d), 2251, 2422, 2252A, 875, 2261A, 2261B(a), and 1959(a). Defendant further acknowledges that the Superseding Information in this case seeks forfeiture of all of the rights, titles, and interests in any property, real or personal, used or intended to be used to commit or to promote the commission of such offenses or any property traceable to such property (including but not limited to all digital devices seized in connection with the child exploitation investigation), and any visual depiction, which was produced, transported, mailed, shipped and received in violation of Chapter 110 of Title 18, pursuant to Title 18, United States Code, Sections 2253 and 2428, by reason of the offenses charged in the Superseding Information.

2. Defendant has read the charges against him contained in the Superseding Information, and those charges have been fully explained to him by his attorney. Defendant fully understands the nature and elements of the crimes with which he has been charged.

3. Defendant will enter a voluntary plea of guilty to all counts in the Superseding Information in this case. Defendant will plead guilty because he is in fact guilty of the charges. The parties agree to the following factual basis for this plea:

> "764" is an online network of Racially or Ethnically Motivated Violent Extremists ("REMVE") who engage in criminal conduct within the United States and engage with other extremists abroad. The 764 network's occult accelerationist goals include social unrest and the downfall of the current world order, including the United States Government. "764" is not based on personal gratification of CSAM; rather it seeks to cause unrest and accelerate the collapse of society and the United States Government through its weaponization of child sexual abuse material ("CSAM") and other crimes. Members of "764" work in concert with one another towards a common purpose of destroying civilized society through the corruption and exploitation of youth.
>
> Members of "764", both individually and as a group, methodically target vulnerable, underage populations across the United States and the globe. Members of "764" use known online social media communications platforms, as mediums to support the possession, production, and sharing of extreme gore media and CSAM with vulnerable, juvenile populations. Members of "764" seek to desensitize young people to violence, breaking down societal norms regarding engaging in violence, and normalizing the possession, production, and sharing of explicit CSAM and gore material to corrupt and groom them towards future violence.
>
> Individual victims are targeted through synchronized group chats, as members of "764" conduct coordinated extortions of teenagers that are intended to blackmail the victims to comply with the demands of the group. These demands vary and include, but are not limited to, self-mutilation, online and in-person sexual acts, harm to animals, sexual exploitation of siblings, acts of random violence, suicide, and murder.
>
> Historically, members of "764" systematically target underage females, groom them, extort them as a group, and force them to mutilate themselves or others and either film or photograph such activity. The group then commonly edits compilation photographs or videos of their victims and shares these photographs or videos on their social media platforms to gain notoriety amongst members of the group and spread fear among their victims. This activity is all for the purpose of

accelerating chaos under the "764" ideology with an aim towards the disruption of society.

The group has shifted names over time and led to known offshoot groups, including "8884." Tinajero was involved in "8884" and several other online accelerationist groups, including "764" and groups relating to "764." Although the group moves between social media channels and changes its name, the core members and goals remain consistent and appear under the overarching threat of "764" and its related groups.

Tinajero and other members of 764 generally, and 8884 more specifically, directly victimized numerous people, including minors located in the United States and overseas, extorting them to produce and share explicit and sexual content of themselves, engage in acts of violence involving pets, and engage in serious acts of self-harm, including cuttings and self-mutilation. Tinajero agrees that the 764 Enterprise as described is an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1959(b)(2) and 1961(4).

In order to engage in various criminal acts on behalf of the 764 Enterprise, members of the 764 Enterprise used communications applications including, but not limited to, TikTok, Telegram, and Discord. Tik Tok, Telegram, and Discord are communications applications that have an effect on interstate and foreign commerce in that they allow users in multiple states and countries to communicate with each other and allow businesses to advertise on their platforms.

Tinajero engaged in online communications with various other members of the 764 Enterprise, including, but not limited to, individuals known to Tinajero by the following usernames:

   a. "Vitaly" and later "Lazzarus" or "Laz"
   b. Blood Oath
   c. Cript
   d. Rex
   e. Freeway
   f. Volt
   g. Danna
   h. Papapamm03
   i. Mascenas
   j. Tetragramation
   k. Salty7997
   l. LayLou46

As early as April 2023, Tinajero, under the username "Christus," began to send messages over Discord and Telegram to an individual, who has been identified by the FBI ("Jane Doe 1"). In a series of text and voice messages sent to Jane Doe 1, Tinajero forced Jane Doe 1 to create and provide images that are child

3

pornography within the meaning of 18 U.S.C. § 2256(8). As part of his effort to obtain child pornography from Jane Doe 1, Tinajero made repeated posts threatening to kill and otherwise cause physical and mental harm to Jane Doe 1.

Tinajero found Jane Doe 1 within a children's chatroom and began privately messaging Jane Doe 1 from a phone number ending in 6215 (the "6215 Number). The subscriber for the 6215 Number was Tinajero. Within a short amount of time, Tinajero asked Jane Doe 1 for pictures of her feet and stated he would pay money for each picture she sent to him. Tinajero progressed into asking for specific pictures of Jane Doe 1's body parts, including genitals. For each picture or video Jane Doe 1 sent, Tinajero provided Jane Doe 1 with money, primarily through an online app called "Cash App." On April 9, 2023, Tinajero requested a picture from Jane Doe 1. Jane Doe 1 sent Tinajero a picture of Jane Doe 1 with her legs spread showing her vaginal area, though Jane Doe 1 was wearing panties. Tinajero sent Jane Doe 1 a text message stating "panties off" and "same position." Jane Doe 1 asked if Tinajero would pay her; Tinajero replied "yeah." Jane Doe 1 then sent Tinajero a video in the same position without panties showing her vulva. Tinajero replied "hot pink pussy." Within a few minutes, Tinajero sent Jane Doe 1 payment in the form of $40 via Cash App and sent a text message to Jane Doe 1 stating, "I sent you 40 thx for that vid I've been craving it since I met you." The Cash App payment from Tinajero was received by Jane Doe 1. Jane Doe 1 was a minor who had not attained the age of 18 years during the entire period that she communicated with Tinajero.

As Tinajero continued to groom Jane Doe 1, his requests became demands, and his demands became even more graphic and violent. Tinajero sent Jane Doe 1 a video of a young girl being molested by an adult and self-identified as a pedophile. On May 28, 2023, Tinajero sent Jane Doe 1 a video focused on an erect penis and the male appeared to be masturbating. On June 5, 2023, Tinajero sent Jane Doe 1 a text message stating, "You'll look cute riding me" and sent a picture of the bottom half of a male torso with the left hand at the base of an erect penis.

In June 2023, Tinajero progressed with threatening behavior and, on June 14, 2023, Tinajero sent Jane Doe 1 a text message stating, "I wanna cut you" followed by a selfie with Tinajero holding a blade in front of his face. On June 18, 2023, Tinajero sent Jane Doe 1 a text message stating, "I'm a proud stalker" and "a proud pedophile." Tinajero became controlling over Jane Doe 1 and threatened to send nude photographs of Jane Doe 1 to Jane Doe 1's family if Jane Doe 1 did not answer texts within a certain time frame. On June 21, 2023, Tinajero sent Jane Doe 1 a text message stating, "I know and I know all their names and where they work" and "but I'm not going to do anything as long as you cooperate w me."  On June 22, 2023, Tinajero texted Jane Doe 1: "Imma fuck your life up if you don't text me today" and "Imma find your ass and rape u." On or about August 10, 2023, Tinajero sent a message using an electronic device to Jane Doe 1 threatening to kill Jane Doe 1.

A part of the effort to kill Jane Doe 1, Tinajero made several posts on Telegram and Discord channels dedicated to the 764 Enterprise. In July 2023, Tinajero published a "Lorebook" that contained Jane Doe 1's nude pictures with Jane Doe 1's full name, phone numbers, address, social media contacts, family members, and other personal details (the "Jane Doe 1 Lorebook"). The Jane Doe 1 Lorebook was posted to various groups within the social media platform. Shortly thereafter, Tinajero began posting plans to kill Jane Doe 1. On July 28, 2023, Tinajero made a post that discussed using a "9mm Glock gen 17" to kill Jane Doe 1. On August 10, 2023, Tinajero posted, "If I knew someone in Louisville who would let me stay in their house I would actually be able to kill her while I hide," "That's where she lives," "Cops will go on her phone and see what my car looks like." On August 26, 2023, Tinajero posted "Im determined to die" and "If I gotta kill her I can't let her live and fuck with dudes and girls while I'm sick and miserable" and "Im gonna live stream it." Tinajero also posted a picture of Jane Doe 1 with that message. On September 2, 2023, Tinajero posted "I wanna kill them so bad just show up at their cribs and shoot 100 rounds in 5 seconds" and on September 3, 2023, posted "I didn't wanna do anything bc I was scared of dying or prison but now I'm determined to die if I have to after getting rid of Jane Doe 1 and her stupid bf."

Tinajero also began soliciting others to assist with attempting to kill Jane Doe 1. Tinajero and at least one other co-conspirator, specifically "Vitaly," agreed that one of them would commit the murder of Jane Doe 1. In one series of messages, Tinajero and "Vitaly" agreed that Tinajero would obtain a firearm, drive to Louisville, Kentucky, and murder Jane Doe 1. Tinajero and "Vitaly" agreed that after the murder, Tinajero should dispose of Janel Doe 1's body. "Vitaly" provided Tinajero with information on obtaining a barrel that could be used to dissolve Jane Doe 1's body in acid. The murder of Jane Doe 1 was related to the criminal activity of 764 and was to maintain or increase Tinajero's and "Vitaly's" positions in the 764 Enterprise.

After several threats from Tinajero, Jane Doe 1 blocked Tinajero and Tinajero sent Jane Doe 1's nude photos to Jane Doe 1's aunt. On August 30, 2023, after Jane Doe 1 blocked Tinajero's number, Tinajero texted from a different phone number ending with 2947 (the "2947 number"), stating, "I fucking hate you bitch." The subscriber for the 2947 number was Tinajero.

On September 4, 2023, Tinajero attempted to purchase an AR-15 from a firearms distributor located in Conway, Arkansas. In the application, Tinajero listed his home address and his phone number as the 2947 number. The background check to purchase the AR 15 was delayed, and Tinajero was not able to obtain the firearm.

In addition to his efforts to obtain and share child pornography from Jane Doe 1, Tinajero, Laz, and other co-conspirators in the United States and elsewhere agreed to obtain child pornography from other individuals, including, but not limited to, minors Jane Doe 2, Jane Doe 3, and Jane Doe 4. This agreement to

obtain child pornography was one of the stated goals of the 764 Enterprise and contributed to the status of various individual members within the 764 Enterprise.

Individual members of the 764 Enterprise competed to increase their status within the enterprise by various measures. An individual member could increase their status based on the amount of child pornography they were able to compile from different victims. Members also enhanced their status within the Enterprise by "owning" victims, as symbolized by getting the victim to "fansign," or cut the member's username into their body, sometimes carving through the skin and to the bone. Compelling a victim to commit an act of violence against themselves, others, or animals generally increased the 764 Enterprise members' status. Within the 764 Enterprise, compelling a victim to livestream their own suicide is considered an act that would give the individual member as high a rank as possible in the Enterprise.

On at least one occasion, Tinajero was present in an online chat room with Laz and other known and unknown coconspirators, where the coconspirators directed a female who Tinajero and others believed was as young as 12 years old to repeatedly cut herself with a knife, and it was Tinajero's understanding that Laz and their coconspirators intended to cause the 12-year-old female to kill herself through the self-mutilation.

Tinajero also was aware that certain sects of the 764 Enterprise engaged in "swatting" and hoaxes involving mass-casualty events. "Swatting" is an act by which a member of the Enterprise falsely would report an act of violence to law enforcement in the hope that law enforcement would respond to the reported location. Ultimately, the goal of the swatting was to cause law enforcement to kill the person who was falsely reported to be the person causing the act of violence.

Tinajero was present for discussions among other members of the 764 Enterprise during which they discussed actual violent attacks. Among other things, the members of the 764 Enterprise discussed previous attacks made on people and places as well as future attacks on heavily populated areas such as malls or other large gatherings, LGBTQ+ events and gatherings, schools, public places, government buildings, and police stations. Members of the 764 Enterprise regularly discussed causing as much harm as possible to create chaos in an effort to retaliate against the United States government, destabilize society, and cause the collapse of governments and the rule of law.

4.  Defendant understands that the charges to which he will plead guilty carry a combined minimum term of imprisonment of 15 years, a combined maximum term of imprisonment of life, a combined maximum fine of $250,000, and a term of supervised release of at least 5 years and up to any number of years, including life, which the Court may specify.

Defendant understands that an additional term of imprisonment may be ordered if the terms of the supervised release are violated, as explained in 18 U.S.C. § 3583. Defendant understands that as a result of the charges to which he will plead guilty, he may be ordered to forfeit all of the rights, titles, and interests in any property, real or personal, used or intended to be used to commit or to promote the commission of such offenses, or any property traceable to such property (including but not limited to all digital devices seized in connection with the child exploitation investigation), and any visual depiction which was produced, transported, mailed, shipped and received in violation of Chapter 110 of Title 18, pursuant to Title 18, United States Code, Sections 2253 and 2428, by reason of the offenses charged in the Superseding Information.

5. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, which may include the offense to which Defendant is pleading guilty. In addition, if he is a naturalized citizen, Defendant acknowledges that certain convictions, which may include Defendant's conviction, may expose him to denaturalization under federal law. Because removal, denaturalization, and other immigration consequences are handled in separate proceedings, Defendant understands that no one, including his attorney or the U.S. District Court, can predict with certainty how his conviction may affect his immigration, naturalization, or citizenship status. Defendant agrees to plead guilty with a full understanding that this guilty plea may lead to adverse immigration consequences, including denaturalization and possible automatic removal from the United States.

6. Defendant understands that if a term of imprisonment of more than one year is imposed, the Sentencing Guidelines require a term of supervised release and that he will then be subject to certain conditions of release. §§5D1.1, 5D1.2, 5D1.3.

7

7.  Defendant understands that by pleading guilty, he surrenders certain rights set forth below. Defendant's attorney has explained those rights to him and the consequences of his waiver of those rights, including the following:

   A.  If Defendant persists in a plea of not guilty to the charges against him, he has the right to a public and speedy trial. The trial could either be a jury trial or a trial by the judge sitting without a jury. If there is a jury trial, the jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that Defendant is presumed innocent and that it could not convict him unless, after hearing all the evidence, it was persuaded of Defendant's guilt beyond a reasonable doubt.

   B.  At a trial, whether by a jury or a judge, the United States would be required to present its witnesses and other evidence against Defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, Defendant could present witnesses and other evidence in his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

   C.  At a trial, Defendant would have a privilege against self-incrimination and he could decline to testify, without any inference of guilt being drawn from his refusal to testify. If Defendant desired to do so, he could testify in his own behalf.

8.  Defendant understands that the United States Attorney's Office has an obligation to fully apprise the District Court and the United States Probation Office of all facts pertinent to the

8

sentencing process, and to respond to all legal or factual inquiries that might arise either before, during, or after sentencing. Defendant admits all acts and essential elements of the Superseding Information counts to which he pleads guilty.

      9. Defendant acknowledges liability for the special assessment mandated by 18 U.S.C. § 30 and will pay the assessment in the amount of $1,500 to the United States District Court Clerk's Office by the date of sentencing.

      10. At the time of sentencing, the United States and the Defendant agree to the following:

> -agree that a sentence of 300 months is the appropriate disposition of this case.
>
> -agree that a fine at the lowest end of the applicable Guideline Range is appropriate, and it is to be due and payable on the date of sentencing.[1]
>
> -agree that a reduction of 3 levels below the otherwise applicable Guideline for "acceptance of responsibility" as provided by §3E1.1(a) [and (b)] is appropriate, provided the Defendant does not engage in future conduct which violates any federal or state law, violates a condition of bond, constitutes obstruction of justice, or otherwise demonstrates a lack of acceptance of responsibility. Should such conduct occur and the United States, therefore, opposes the reduction for acceptance, this plea agreement remains binding and the defendant will not be allowed to withdraw his plea.
>
> -demand forfeiture of all of the rights, titles, and interests in any property, real or personal, used or intended to be used to commit or to promote the commission of such offenses or any property traceable to such property (including but not limited to all digital devices seized in connection with the child exploitation investigation), and any visual depiction which was produced, transported, mailed, shipped and received in violation of Chapter 110 of Title 18, pursuant to Title18, United States Code, Sections 2253 and 2428, by reason of the offenses charged in the Superseding Information.

---

[1] The defendant acknowledges that he has read the Notice and Penalty Pages attached to the Superseding Information, and that he understands the interest and penalty provisions applicable to the fine imposed and included in the Judgment entered by the Court, said Notice and Penalty Pages are incorporated herein by reference.

-agree that the United States Sentencing Guideline §3A1.4, Application Note 4, shall apply to the sentencing in this matter in that the offense was calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct but the offense involved, or was intended to promote, an offense other than one of the offenses specifically enumerated in 18 U.S.C. § 2332b(g)(5)(B).

11. Defendant agrees to the following waivers of appellate and post-conviction rights:

   A. The Defendant is aware of his right to appeal his conviction and that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Unless based on claims of ineffective assistance of counsel or prosecutorial misconduct, the Defendant knowingly and voluntarily waives the right to directly appeal his conviction and the resulting sentence pursuant to Fed. R. App. P. 4(b) and 18 U.S.C. § 3742.

   B. The Defendant is aware of his right to contest or collaterally attack his conviction and the resulting sentence under 28 U.S.C. § 2255 or otherwise. Unless based on claims of ineffective assistance of counsel or prosecutorial misconduct, Defendant knowingly and voluntarily waives any collateral attack argument; and

   C. The Defendant knowingly and voluntarily agrees to limit any motion for compassionate release for extraordinary and compelling reasons, pursuant to 18 U.S.C. §3582(c)(1)(A)(i), that the defendant may file in the future to the grounds listed in USSG §1B1.13(b)(1)-(5). The defendant knowingly and voluntarily waives the option to move for compassionate release based on any non-retroactive change in the law, including as provided for under USSG §1B1.13(b)(6) ("Unusually Long Sentence").

12. Defendant agrees to waive any double jeopardy challenges that defendant may have to any administrative or civil forfeiture actions arising out of the course of conduct that provide the factual basis for this Superseding Information. Defendant further agrees to waive any double jeopardy challenges that defendant may have to the charges in this Superseding Information based upon any pending or completed administrative or civil forfeiture actions.

13. Defendant waives and agrees to waive any rights under the Speedy Trial Act and understands and agrees that sentencing may be delayed until the cooperation phase has been completed and title to all assets has fully vested in the United States. The reason for such waiver is so that at sentencing the Court will have the benefit of all relevant information.

14. Defendant agrees to interpose no objection to the United States transferring evidence or providing information concerning defendant and this offense, to other state and federal agencies or other organizations, including, but not limited to the Internal Revenue Service, other law enforcement agencies, and any licensing and regulatory bodies, or to the entry of an order under Fed. R. Crim. P. 6(e) authorizing transfer to the Examination Division of the Internal Revenue Service of defendant's documents, or documents of third persons, in possession of the Grand Jury, the United States Attorney, or the Criminal Investigation Division of the Internal Revenue Service.

15. Defendant agrees to forfeit and abandon any right to any and all evidence and property seized during the course of this investigation (including but not limited to any item subject to forfeiture), and waives any right to seek the return of any property pursuant to Fed. R. Crim. P. 41 or otherwise. Defendant understands and agrees that items seized during the course of this investigation will be destroyed or otherwise disposed of by the seizing law enforcement agency.

16. The Defendant understands and agrees that, consistent with the provisions of 18 U.S.C. § 3143, following the change of plea the Defendant shall be detained pending sentencing.

17. If the Court refuses to accept this agreement and impose sentence in accordance with its terms pursuant to Fed. R. Crim. P. 11(c)(1)(C), this Agreement will become null and void and neither party shall be bound thereto, and Defendant will be allowed to withdraw the plea of guilty. Specifically, all of the United States' promises, including any consent to a plea to a lesser

included offense or dismissal of other charges, are contingent on the district court's subsequent acceptance of this plea agreement. If this agreement allows Defendant to plead to a lesser-included offense, Defendant agrees that his original charges will automatically be reinstated and Defendant waives any double jeopardy rights he/she may have with respect to the greater offense if the court subsequently rejects the parties' plea agreement--even if Defendant declines to withdraw his guilty plea to the lesser-included offense.

18. Defendant agrees that the disposition provided for within this Agreement is fair, taking into account all aggravating and mitigating factors. Defendant states that he has informed the United States Attorney's Office and the Probation Officer, either directly or through his attorney, of all mitigating factors. Defendant will not oppose imposition of a sentence incorporating the disposition provided for within this Agreement, nor argue for any other sentence. If Defendant argues for any sentence other than the one to which he has agreed, he is in breach of this Agreement. Defendant agrees that the remedy for this breach is that the United States is relieved of its obligations under this Agreement, but Defendant may not withdraw his guilty plea because of his breach.

19. This document and the supplemental plea agreement state the complete and only Plea Agreements between the United States Attorney for the Western District of Kentucky and Defendant in this case, and are binding only on the parties to this Agreement, supersedes all prior understandings, if any, whether written or oral, and cannot be modified other than in writing that are signed by all parties or on the record in Court. No other promises or inducements have been or will be made to Defendant in connection with this case, nor have any predictions or threats been made in connection with this plea.

AGREED:

MICHAEL A. BENNETT
United States Attorney

By:

_____          _2-11-25_____
Erwin Roberts                              Date
Assistant United States Attorney


     I have read this Agreement and carefully reviewed every part of it with my attorney. I fully understand it and I voluntarily agree to it.

_____          _2.11.25_____
Jairo Jaime Tinajero                       Date
Defendant


     I am the defendant's counsel. I have carefully reviewed every part of this Agreement with the defendant. To my knowledge my client's decision to enter into this Agreement is an informed and voluntary one.

_____          _2.11.25_____
Chastity Beyl                              Date
Counsel for Defendant

MAB:ER

13