**FILED**
JAMES J. VILT, JR. - CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

FEB 11 2025

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

UNITED STATES OF AMERICA

v.

**JAIRO JAIME TINAJERO**

SUPERSEDING INFORMATION

NO. 3:23-CR-112-CRS

18 U.S.C. § 1962(d)
18 U.S.C. § 2251(a)
18 U.S.C. § 2251(e)
18 U.S.C. § 2422(b)
18 U.S.C. § 2252A(a)(2)(B)
18 U.S.C. § 875
18 U.S.C. § 2261A(2)
18 U.S.C. § 2261B(a)
18 U.S.C. § 1959

The United States Attorney charges:

COUNT 1
(Racketeering Conspiracy, 18 U.S.C § 1962(d))

Introduction

1. At various times relevant to this Superseding Information, the defendant **Jairo Jaime Tinajero**, a/k/a "Christus," a/k/a "dreamer370," ("defendant" or "TINAJERO") and others known and unknown, were members and associates of "764," a criminal organization whose members and associates engage in the possession, production, and distribution of child sexual abuse material, and acts and threats involving murder.

2. 764 is a network of Violent Extremists who engage in criminal conduct within the United States and engage with other extremists abroad. The 764 network's occult accelerationist goals include social unrest and the downfall of the current world order, including the United States Government. Members of 764 work in concert with one another towards a common purpose of destroying civilized society through the corruption and exploitation of youth.

3.  Members of 764, both individually and as a group, methodically target vulnerable, underage populations across the United States and the globe. Members of 764 use known online social media communications platforms as mediums to support the possession, production, and sharing of extreme gore media and child sexual abuse material ("CSAM") with vulnerable, juvenile populations. Members of 764 seek to desensitize young people to violence, breaking down societal norms regarding engaging in violence, and normalizing the possession, production, and sharing of explicit CSAM and gore material to corrupt and groom people towards future violence.

4.  Individual victims are targeted through synchronized group chats, as members of 764 will blackmail and coerce the victims to comply with the demands of the group. These demands vary and include, but are not limited to, self-mutilation, online and in-person sexual acts, harm to animals, sexual exploitation of siblings, acts of random violence, suicide, and murder.

5.  Historically, members of 764 systematically target underage females, groom them, blackmail them as a group, and force them to mutilate themselves or others and either film or photograph such activity. The group will then commonly edit compilation photographs or videos of their victims, share these photographs or videos on their social media platforms to gain notoriety amongst members of the group, and spread fear among their victims, all for the purpose of accelerating chaos under the 764 ideology with an aim towards the disruption of society.

6.  The 764 group has shifted names over time and spawned known offshoot groups, including sects known as "7997" and "8884" to which TINAJERO belonged. Although the group moves between social media channels and changes its name, the core members and goals remain consistent and appear under the overarching threat of 764.

7.  At various times relevant to this Superseding Information, the defendant was a resident of Arkansas, and Jane Does 1 through 4 resided within the Western District of Kentucky.

## The Racketeering Enterprise

8.      At all times relevant to the Superseding Information, 764, including its leaders, members, and associates, constituted an "enterprise," as that term is defined by Title 18, United States Code, Sections 1959(b)(2) and 1961(4), that is, a group of individuals associated in fact that engaged in and the activities of which affected interstate and foreign commerce (the "764 Enterprise" or the "Enterprise"). The enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. TINAJERO and others were members and associates of the 764 Enterprise.

## Purposes of the Enterprise

9.      The purposes of the 764 Enterprise included the following:

   a.      Achieving accelerationist[1] goals, including causing as much harm as possible to create chaos in an effort to retaliate against the United States government and other governments, destabilize society, and cause the collapse of governments and the rule of law;

   b.      Working in concert with one another towards a common purpose of destroying civilized society through the corruption and exploitation of youth;

   c.      Using electronic communication and online social media communications platforms as mediums to support the possession, production, and sharing of CSAM, at least in part to further the accelerationist goals of the 764 Enterprise, among other related online networks;

---

1 Accelerationism refers to a white-supremacist belief that the existing state of society is irreparable and that the only solution is the destruction and collapse of the "system." Accelerationism is premised on the idea that steps can be taken to speed up the collapse of the system, to wit: the destruction of the U.S. power grid, among other acts of violence.

d. Using electronic communication and online social media communications platforms, as mediums to support the possession, production, and sharing of extreme gore media, at least in part to further the accelerationist goals of the 764 Enterprise, among other related online networks;

e. Targeting victims through synchronized group chats, blackmailing the victims to comply with the demands of the group, including, but not limited to, self-mutilation, online and in-person sexual acts, harm to animals, sexual exploitation of siblings, acts of random violence, suicide, and murder, at least in part to further the accelerationist goals of the 764 Enterprise, among other related online networks;

f. Threatening victims with violence or death, at least in part to further the accelerationist goals of the 764 Enterprise, among other related online networks; and

g. Avoiding detection of criminal activity.

<u>Means and Methods of the Enterprise</u>

10. Among the means and methods by which members and associates of the 764 Enterprise conducted and participated in the conduct of the Enterprise were the following:

a. Members and associates of the Enterprise used electronic communication and online social media communications platforms as mediums to support the possession, production, and sharing of child sexual abuse material ("CSAM"), at least in part to further the accelerationist goals of the 764 Enterprise, among other related online networks. The accelerationist goals of the 764 Enterprise included causing as much harm as possible to create chaos in an effort to retaliate against the

United States government, destabilize society, and cause the collapse of governments and the rule of law.

b. Members and associates of the Enterprise used electronic communication and online social media communications platforms, as mediums to support the possession, production, and sharing of extreme gore media, at least in part to further the accelerationist goals of the 764 Enterprise, among other related online networks.

c. Members and associates of the Enterprise targeted victims through synchronized group chats, blackmailing the victims to comply with the demands of the group, including, but not limited to, self-mutilation, online and in-person sexual acts, harm to animals, sexual exploitation of siblings, acts of random violence, suicide, and murder, at least in part to further the accelerationist goals of the 764 Enterprise, among other related online networks.

d. Members and associates of the Enterprise used interstate communications to threaten victims with violence or death, at least in part to further the accelerationist goals of the 764 Enterprise, among other related online networks.

<u>The Racketeering Conspiracy</u>

11.    From at least as early as April 1, 2023, the exact date being unknown, and continuing until at least October 4, 2023, in the Western District of Kentucky and elsewhere, the defendant **JAIRO JAIME TINAJERO**, and others known and unknown, each being a person employed by and associated with the 764 Enterprise, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as defined in Sections 1961(1) and (5) of Title 18, United States Code, which pattern of racketeering activity

consisted of multiple acts or threats involving murder, chargeable under Arkansas Code Annotated, Sections 5-10-102, 5-3-401, 5-3-201, and 5-3-202, and Kentucky Revised Statute Sections 507.020, 502.020, 506.010, and 506.040, and multiple acts indictable under 18 U.S.C. § 2422 (relating to coercion and enticement), 18 U.S.C. § 2251 (relating to the sexual exploitation of children), and 18 U.S.C. § 2252 (relating to the sexual exploitation of children).

12. It was part of the conspiracy that the defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the 764 Enterprise.

### Overt Acts

13. In furtherance of the racketeering conspiracy, and to effect the object thereof, the Defendant and his conspirators committed and caused to be committed the following overt acts, among others, in the Western District of Kentucky and elsewhere:

   a. In or about and between April 2023 and September 2023, the defendant and at least one co-conspirator used a social media communications platform to induce minors, including Jane Does 1 through 4, to photograph and video record themselves exposing their breasts and genitalia and engaging in masturbation.

   b. On or about April 9, 2023, the defendant paid Jane Doe-1 to photograph her genitalia and send the photograph of her genitalia to defendant using a social media communication platform.

   c. On or about April 23, 2023, the defendant paid Jane Doe-1 to photograph her genitalia and send the photograph of her genitalia to defendant using a social media communication platform.

   d. On or about May 20, 2023, the defendant paid Jane Doe-1 to photograph her genitalia and send the photograph of her genitalia to defendant using a social media communication platform.

e.  On or about July 4, 2023, the defendant distributed material to at least one co-conspirator that contained child pornography using any means and facility of interstate commerce, including by computer.

f.  On or about July 17, 2023, the defendant distributed material that contained child pornography to at least one co-conspirator using any means and facility of interstate commerce, including by computer.

g.  On or about July 17, 2023, the defendant published a "Lorebook" that contained Jane Doe 1's nude pictures with Jane Doe 1's full name, phone numbers, address, social media contacts, family members, and other personal details using a social media communications platform.

h.  On or about June 22, 2023, the defendant sent a text message to Jane Doe 1 in which he threatened to rape Jane Doe 1.

i.  On or about August 10, 2023, the defendant posted a message on a social media communications platform in which he threatened to kill Jane Doe 1.

j.  On or about August 26, 2023, the defendant posted a message on a social media communications platform in which he threatened to kill Jane Doe 1.

k.  On or about September 2, 2023, the defendant posted a message on a social media communications platform in which he threatened to kill Jane Doe 1.

l.  On or about September 3, 2023, defendant posted a message on a social media communications platform in which he threatened to kill Jane Doe 1.

m.  From on or about June 2023, the exact date being unknown, until about September 2023, the defendant and at least one co-conspirator, used text messages, chat messages and social media platforms, to send threatening messages that caused

substantial emotional distress to Jane Does 1 through 4 and placed them in reasonable fear of death or serious bodily injury.

n. Beginning in or about July 2023, the defendant, and at least one co-conspirator conspired to murder Jane Doe 1. During multiple discussions over a social media communications platform, defendant and a co-conspirator (CC-1) agreed that defendant should kill Jane Doe 1, and had specific discussions about the method defendant would use to kill her and dispose of the body after the murder.

o. Between on or about July 28, 2023, and September 3, 2023, defendant posted multiple messages stating that he planned to kill Jane Doe 1 with a firearm because Jane Doe 1 refused to provide additional CSAM to defendant.

p. During several of those posts, CC-1 agreed that defendant should kill Jane Doe 1 and sent defendant information about how to dispose of Jane Doe 1's body in a barrel of acid after the murder.

q. Also, in the time relevant to this Information, CC-1 threatened Jane Doe 1 to coerce her to provide CSAM.

r. On or about September 4, 2023, defendant attempted to purchase an AR-15 assault rifle from a firearms distributor in the State of Arkansas.

In violation of Title 18, United States Code, Section 1962(d).

The United States Attorney further charges:

## COUNT 2
*(Online Enticement)*

14. In or about and between April 2023 and September 2023, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, the defendant, **JAIRO JAIME TINAJERO**, using a facility and means of interstate and foreign commerce, did knowingly

persuade, induce, and entice an individual, who had not attained the age of eighteen years, Jane Doe 1, to engage in sexual activity for which a person may be charged with a criminal offense, to wit: Use of a Minor in a Sexual Performance, in violation of Kentucky Revised Statute § 531.310.

In violation of Title 18, United States Code, Section 2422(b).

The United States Attorney further charges:

## COUNT 3
*(Production of Child Pornography)*

15. On or about April 9, 2023, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, the defendant, **JAIRO JAIME TINAJERO**, used, persuaded, induced, enticed, and coerced a minor, Jane Doe 1, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, knowing or having reason to know that such visual depiction would be transported and transmitted in and affecting interstate and foreign commerce.

In violation of Title 18, United States Code, Sections 2251(a) and 2251(e).

The United States Attorney further charges:

## COUNT 4
*(Production of Child Pornography)*

16. On or about April 23, 2023, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, the defendant, **JAIRO JAIME TINAJERO**, used, persuaded, induced, enticed, and coerced a minor, Jane Doe 1, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, knowing or having reason to know that such visual depiction would be transported and transmitted in and affecting interstate and foreign commerce.

In violation of Title 18, United States Code, Sections 2251(a) and 2251(e).

The United States Attorney further charges:

## COUNT 5
*(Production of Child Pornography)*

17. On or about May 20, 2023, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, the defendant, **JAIRO JAIME TINAJERO**, used, persuaded, induced, enticed, and coerced a minor, Jane Doe 1, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, knowing or having reason to know that such visual depiction would be transported and transmitted in and affecting interstate and foreign commerce.

In violation of Title 18, United States Code, Sections 2251(a) and 2251(e).

The United States Attorney further charges:

## COUNT 6
*(Distribution of Child Pornography)*

18. On or about July 4, 2023, in the Western District of Kentucky, Jefferson County, Kentucky, **JAIRO JAIME TINAJERO**, knowingly distributed material that contained child pornography using any means and facility of interstate and foreign commerce, including by computer.

In violation of Title 18, United States Code, Sections 2252A(a)(2)(B) and (b)(1).

The United States Attorney further charges:

## COUNT 7
*(Distribution of Child Pornography)*

19. On or about July 17, 2023, in the Western District of Kentucky, Jefferson County, Kentucky, **JAIRO JAIME TINAJERO**, knowingly distributed material that contained child

pornography using any means and facility of interstate and foreign commerce, including by computer.

In violation of Title 18, United States Code, Sections 2252A(a)(2)(B) and (b)(1).

The United States Attorney further charges:

## COUNT 8
*(Distribution of Child Pornography)*

20. On or about July 17, 2023, in the Western District of Kentucky, Jefferson County, Kentucky, **JAIRO JAIME TINAJERO**, knowingly distributed material that contained child pornography using any means and facility of interstate and foreign commerce, including by computer.

In violation of Title 18, United States Code, Sections 2252A(a)(2)(B) and (b)(1).

The United States Attorney further charges:

## COUNT 9
*(Interstate Communications with a Threat to Injure)*

21. On or about June 22, 2023, in the Western District of Kentucky, Jefferson County, Kentucky, the defendant, **JAIRO JAIME TINAJERO**, knowingly and willfully did transmit in interstate and foreign commerce from Russellville, State of Arkansas, to the State of Kentucky, a communication to Jane Doe 1, and the communication contained threats to injure Jane Doe 1, specifically a threat to rape Jane Doe 1.

In violation of Title 18, United States Code, Section 875(c).

The United States Attorney further charges:

## COUNT 10
*(Interstate Communications with a Threat to Injure)*

22. On or about August 10, 2023, in the Western District of Kentucky, Jefferson County, Kentucky, the defendant, **JAIRO JAIME TINAJERO**, knowingly and willfully did transmit in interstate and foreign commerce from Russellville, State of Arkansas, to the State of Kentucky, a communication to Jane Doe 1, and the communication contained threats to injure Jane Doe 1, specifically a threat to kill Jane Doe 1.

In violation of Title 18, United States Code, Section 875(c).

The United States Attorney further charges:

## COUNT 11
*(Interstate Communications with a Threat to Injure)*

23. On or about August 26, 2023, in the Western District of Kentucky, Jefferson County, Kentucky, the defendant, **JAIRO JAIME TINAJERO**, knowingly and willfully did transmit in interstate and foreign commerce from Russellville, State of Arkansas, to the State of Kentucky, a communication to Jane Doe 1, and the communication contained threats to injure Jane Doe 1, specifically a threat to kill Jane Doe 1.

In violation of Title 18, United States Code, Section 875(c).

The United States Attorney further charges:

## COUNT 12
*(Interstate Communications with a Threat to Injure)*

24. On or about September 2, 2023, in the Western District of Kentucky, Jefferson County, Kentucky, the defendant, **JAIRO JAIME TINAJERO**, knowingly and willfully did

transmit in interstate and foreign commerce from Russellville, State of Arkansas, to the State of Kentucky, a communication to Jane Doe 1, and the communication contained threats to injure Jane Doe 1, specifically a threat to kill Jane Doe 1.

In violation of Title 18, United States Code, Section 875(c).

The United States Attorney further charges:

## COUNT 13
*(Interstate Communications with a Threat to Injure)*

25. On or about September 3, 2023, in the Western District of Kentucky, Jefferson County, Kentucky, the defendant, **JAIRO JAIME TINAJERO**, knowingly and willfully did transmit in interstate and foreign commerce from Russellville, State of Arkansas, to the State of Kentucky, a communication to Jane Doe 1, and the communication contained threats to injure Jane Doe 1, specifically threat to kill Jane Doe 1.

In violation of Title 18, United States Code, Section 875(c).

The United States Attorney further charges:

## COUNT 14
*(Cyberstalking)*

26. From on or about June 2023, the exact date being unknown, until about September 2023, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, **JAIRO JAIME TINAJERO**, with the intent to injure, harass, and cause substantial emotional distress to a person in another state, namely, Kentucky, used facilities of interstate and foreign commerce, including text messages, chat messages and social media platforms, to engage in a course of

conduct that caused substantial emotional distress to the victim and placed her in reasonable fear of death or serious bodily injury.

In violation of Title 18, United States Code, Sections 2261A(2) and 2261B(a).

The United States Attorney further charges:

## COUNT 15
*(Conspiracy to Murder Jane Doe 1 In Aid of Racketeering)*

27.     The United States Attorney hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 10 of this Information.

28.     At all times relevant to this Superseding Information, the 764 Enterprise, through its leaders, members, and associates, engaged in racketeering activity as defined in 18 U.S.C. 1959(b)(1), and 1961(1), that is, acts involving murder in violation of the laws of the States of Arkansas and Kentucky, and acts indictable under 18 U.S.C. § 2422 (relating to coercion and enticement), 18 U.S.C. § 2251 (relating to the sexual exploitation of children), and 18 U.S.C. § 2252 (relating to the sexual exploitation of children).

29.     In or about the summer of 2023, in the Western District of Kentucky and elsewhere, for the purpose of gaining entrance to and maintaining and increasing position in the 764 Enterprise, an enterprise engaged in racketeering activity, **JAIRO JAIME TINAJERO**, the defendant, and others known and unknown, unlawfully and knowingly conspired to murder Jane Doe 1 in violation of the laws of the State of Arkansas, that is Arkansas Code Annotated, Sections 5-10-102, and 5-3-401, and the Commonwealth of Kentucky, that is Kentucky Revised Statute Sections 507.020 and 506.040.

All in violation of Title 18, United States Code, Section 1959(a)(5).

## SPECIAL FINDINGS

30. The United States Attorney further alleges that the offenses in this Superseding Information committed by **JAIRO JAIME TINAJERO** are felony offenses that were calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct.

All in violation of Title 18, United States Code, Section 2422(b); Title 18, United States Code, Sections 2251(a) and 2251(e); 18, United States Code, Sections 2252A(a)(2)(B) and (b)(1); Title 18 United States Code, Section 875(c); Title 18, United States Code, Sections 2261A(2) and 2261B(a); Title 18 United States Code, Section 1959; Title 18 United States Code, Section 1962; and U.S.S.G. §3A1.4, Application Note 4.

## NOTICE OF FORFEITURE

31. As a result of committing the offenses in this Superseding Information, the defendant, **JAIRO JAIME TINAJERO**, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 2253 and 2428, all of the right, title, and interests in any property, real or personal, used or intended to be used to commit or to promote the commission of such offenses or any property traceable to such property (including but not limited to all digital devices seized in connection with the child exploitation investigation), and any visual depiction which was produced, transported, mailed, shipped and received in violation of Chapter 110 of Title 18.

*[signature]*

MICHAEL A. BENNETT
United States Attorney

MAB:ER:1/3/2025

UNITED STATES OF AMERICA v. **JAIRO JAIME TINAJERO**

## PENALTIES

| | |
|---|---|
| Count 1: | NM 20 yrs./$250,000/both/ NL 5 yrs./NM Life Supervised Release |
| Count 2: | NL 10 yrs./NM Life/$250,000/both/NL 5 yrs./NM Life Supervised Release (per count) |
| | (mandatory $5,000 assessment if the defendant is non-indigent – (18 U.S.C. § 3014 – effective 5/29/2015) per count) |
| Counts 3-5: | NL 15 yrs./NM 30 yrs./$250,000/both/NL 5 yrs./NM Life Supervised Release (per count) |
| Counts 6-8: | NL 5 yrs./NM 20 yrs./$250,000/both/NL 5 yrs./NM Life Supervised Release (per count) |
| Counts 9-13: | NM 5 yrs./$250,000/both/ NL 5 yrs./NM Life Supervised Release (per count) |
| Count 14: | NM 5yrs./$250,000/both/ NL 5 yrs./NM Life Supervised Release |
| Count 15: | NM 10 yrs./$250,000/both/NL 5 yrs./NM Life Supervised Release |
| Forfeiture | |

## N O T I C E

### ANY PERSON CONVICTED OF AN OFFENSE AGAINST THE UNITED STATES SHALL BE SUBJECT TO SPECIAL ASSESSMENTS, FINES, RESTITUTION & COSTS.

SPECIAL ASSESSMENTS

18 U.S.C. § 3013 requires that a special assessment shall be imposed for each count of a conviction of offenses committed after November 11, 1984, as follows:

| | | | |
|---|---|---|---|
| Misdemeanor: | $ 25 per count/individual | Felony: | $100 per count/individual |
| | $125 per count/other | | $400 per count/other |

FINES

In addition to any of the above assessments, you may also be sentenced to pay a fine. Such fine is due <u>immediately</u> unless the court issues an order requiring payment by a date certain or sets out an installment schedule. You shall provide the United States Attorney's Office with a current mailing address for the entire period that any part of the fine remains unpaid, or you may be held in contempt of court. 18 U.S.C. § 3571, 3572, 3611, 3612

**Failure to pay fine as ordered may subject you to the following**:

1. **INTEREST** and **PENALTIES** as applicable by law according to last date of offense.

    For offenses occurring after December 12, 1987:

    No **INTEREST** will accrue on fines under $2,500.00.

    **INTEREST** will accrue according to the Federal Civil Post-Judgment Interest Rate in effect at the time of sentencing. This rate changes monthly. Interest accrues from the first business day following the two week period after the date a fine is imposed.

    **PENALTIES** of:

    10% of fine balance if payment more than 30 days late.

    15% of fine balance if payment more than 90 days late.

2. Recordation of a **LIEN** shall have the same force and effect as a tax lien.

3. Continuous **GARNISHMENT** may apply until your fine is paid.

    18 U.S.C. §§ 3612, 3613

    If you **WILLFULLY** refuse to pay your fine, you shall be subject to an **ADDITIONAL FINE** of not more than the greater of $10,000 or twice the unpaid balance of the fine; or **IMPRISONMENT** for not more than 1 year or both. 18 U.S.C. § 3615

RESTITUTION

If you are convicted of an offense under Title 18, U.S.C., or under certain air piracy offenses, you may also be ordered to make restitution to any victim of the offense, in addition to, or in lieu of any other penalty authorized by law.   18 U.S.C. § 3663

APPEAL

If you appeal your conviction and the sentence to pay your fine is stayed pending appeal, the court shall require:

1.  That you deposit the entire fine amount (or the amount due under an installment schedule during the time of your appeal) in an escrow account with the U.S. District Court Clerk, or

2.  Give bond for payment thereof.

18 U.S.C. § 3572(g)

PAYMENTS

If you are ordered to make payments to the U.S. District Court Clerk's Office, certified checks or money orders should be made payable to the Clerk, U.S. District Court and delivered to the appropriate division office listed below:

| | |
|---|---|
| LOUISVILLE: | Clerk, U.S. District Court<br>106 Gene Snyder U.S. Courthouse<br>601 West Broadway<br>Louisville, KY   40202<br>502/625-3500 |
| BOWLING GREEN: | Clerk, U.S. District Court<br>120 Federal Building<br>241 East Main Street<br>Bowling Green, KY   42101<br>270/393-2500 |
| OWENSBORO: | Clerk, U.S. District Court<br>126 Federal Building<br>423 Frederica<br>Owensboro, KY   42301<br>270/689-4400 |
| PADUCAH: | Clerk, U.S. District Court<br>127 Federal Building<br>501 Broadway<br>Paducah, KY   42001<br>270/415-6400 |

If the court finds that you have the present ability to pay, an order may direct imprisonment until payment is made.